IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.

MICHELLE CALHOUN,

Plaintiff,

vs.

JEFFERSON HILLS CORPORATION, a Colorado nonprofit corporation,

Defendant.

## COMPLAINT AND JURY DEMAND

Plaintiff complains as follows:

### PARTIES, JURISDICTION AND VENUE

1. Plaintiff Michelle Calhoun is a resident of Aurora, Arapahoe County, Colorado.

2. Defendant Jefferson Hills Corporation (Jefferson Hills) is a nonprofit corporation providing residential child care and mental health therapy services.

3. At all relevant times, Defendant operated a facility in Aurora, Colorado.

4. At all relevant times, Defendant operated a facility in Lakewood, Colorado.

5. This Court has jurisdiction over all claims for relief under 28 U.S.C. §1331, and specifically,

    a. over the First and Second Claims for Relief, which allege race discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* (Title VII), and

      b.      over the Third and Fourth Claims for Relief, which allege disability discrimination and retaliation in violation of the Americans with Disabilities Act, as amended, under 42 U.S.C. §12117(a) (ADA).

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because the employment practices alleged to be unlawful were committed within the District of Colorado.

7. At all relevant times Jefferson Hills was an "employer" as defined in 42 U.S.C. §12111(5) of the Americans with Disabilities Act.

8. At all relevant times, Jefferson Hills was an "employer" as defined in 42 U.S.C. §2000e(b) of Title VII.

## GENERAL ALLEGATIONS

9. Ms. Calhoun began employment with Jefferson Hills in June 2007 as a Transporter.

10. Ms. Calhoun worked at Jefferson Hills's Aurora, Colorado, facility.

11. She was later promoted to Head of Transport in 2014.

12. As Head of Transport, Ms. Calhoun was responsible for scheduling medical, court, and other appointments for residents; driving residents to and from these appointments and other facilities; filling out paperwork related to these tasks; transporting residents for other needs like shopping; directing other employees in the transportation department as to other transportation duties; and other duties as assigned.

13. Ms. Calhoun had an excellent performance record throughout her employment.

14. In September 2018, Ms. Calhoun was injured at work.

15. Her physician gave her medical restrictions any items over her head.

16. Ms. Calhoun was able to continue performing the essential functions of her job after her injury because lifting was not part of her duties as Head of Transport.

17. On July 16, 2019, Ms. Calhoun met with Jefferson Hills's Deputy Director, Michael Barrows, and Human Resources Manager, Tina Cartaya.

18. Mr. Barrows and Ms. Cartaya advised her that she would be transferred from the Aurora location to the Lakewood location.

19. They also told her that she would be reassigned from the position of Head of Transport to a different position that would not be in a transportation role.

20. They stated that they had to transfer her to the Lakewood location because her medical condition and restrictions could not be accommodated at the Aurora facility because that facility was downsizing.

21. However, white employees with similar medical restrictions and/or disabilities were not required to transfer.

22. One of these employees had injured her foot at work, and had to wear a medical boot.

23. Another one of these employees had injured her knee at work, had been off work for about three months, and had expected to return to work within a few weeks when Jefferson Hills instead terminated her.

24. A third employee had injured her neck at work, and after surgery, worked limited hours, used a walker, and wore a neck brace.

25. Additionally, Jefferson Hills retained at the Aurora location a white employee with substantially less experience working in transportation to perform the tasks Ms. Calhoun had performed, while Ms. Calhoun would be reassigned.

26. On July 18, 2019, Ms. Calhoun sent a letter to Mr. Barrows and Ms. Cartaya summarizing her concerns about the transfer.

27. In this letter, she asked that they confirm that the reason for her transfer was her medical restrictions.

28. She also asked whether they claimed that there were no other employees with medical restrictions who would remain employed at the Aurora facility without being transferred.

29. She asked this because she was aware of the other white employees with medical restrictions who were not being asked to transfer to Lakewood at that time.

30. Finally, she asked whether their assessment of her medical restrictions was premature because she was scheduled to have an appointment assessing her restrictions in a few weeks.

31. On July 19, 2019, Ms. Calhoun met with Mr. Barrows and Ms. Cartaya to discuss the letter and her concerns about the transfer.

32. At the meeting, Ms. Calhoun also raised her concern that by changing locations, her schedule would be more adverse, in that it would make it more difficult to attend to her family responsibility of caring for her grandchildren.

33. Ms. Calhoun also advised that the schedule would be adverse because it required weekend work, and she had church commitments on Sundays.

34. She informed Ms. Cartaya and Mr. Barrows that the transfer was also adverse because Aurora facility was also closer to her home and to her grandchildren's school than the Lakewood facility.

35. Nonetheless, Ms. Calhoun agreed to a temporary schedule at the Lakewood facility, to begin the following week.

36. Later that day, Ms. Calhoun asked Mr. Barrows if she could come in the next day, a Saturday, to gather items to prepare for the transfer.

37. Mr. Barrows approved her request.

38. The next day, July 20, 2019, Ms. Calhoun gathered items from her office at the Aurora location to prepare for the transfer.

39. On July 23, 2019, Mr. Barrows called Ms. Calhoun, and asked if she could come in the following day to discuss the possibility of a different work schedule.

40. When Ms. Calhoun arrived for the meeting on July 24, 2019, Mr. Barrows and Jefferson Hills' Executive Director, Karen Yarberry, were present.

41. Mr. Barrows and Ms. Yarberry, informed Ms. Calhoun that she was being put on administrative leave.

42. They alleged that Ms. Calhoun had used a Jefferson Hills vehicle for personal use.

43. Ms. Calhoun had not done so, and denied the allegation.

44. Mr. Barrows and Ms. Yarberry cited the fact that Ms. Calhoun had been at the facility on Saturday, when she was not scheduled for work, as evidence supporting the allegation.

45. Ms. Calhoun responded that Mr. Barrows himself had authorized her to go in to clean out her office.

46. Mr. Barrows admitted that he authorized this.

47. Mr. Barrows and Ms. Yarberry also claimed that one of the Jefferson Hills vans had been driven over 200 miles on Saturday, July 20, and that she had used the van for personal use on unspecified weekend days in April and May.

48. Ms. Calhoun again stated that she had never used a Jefferson Hills vehicle for her own personal use.

49. Ms. Calhoun responded that on occasion, she did use a Jefferson Hills van on the weekends, but only for work purposes and as directed by a manager.

50. Ms. Calhoun also advised that she did not come in to Jefferson Hills's facility on Sundays as she had church activities those days.

51. Ms. Calhoun owned her own personal vehicle, and had no need to use a Jefferson Hills van outside of work.

52. Mr. Barrows then alleged that the transportation department was still being run "loosely," and Ms. Calhoun was therefore being placed on unpaid leave while Jefferson Hills conducted an investigation.

53. On or around July 25, 2019, Ms. Calhoun filed a charge with the Equal Employment Opportunity Commission (EEOC) based on the differential treatment surrounding her transfer.

54. During her leave, Jefferson Hills never contacted or interviewed her about the allegations.

55. Instead, on July 30, 2019, she was terminated.

56. Ms. Cartaya claimed that the decision was based on the accounts of two witnesses.

57. These purported witness statements were not presented to Ms. Calhoun during the investigation or at any time before she was terminated.

58. Ms. Calhoun was replaced in her duties by the white, non-disabled employee who had only worked in a transportation role for a few months before Ms. Calhoun was terminated.

59. The white employee who had injured her foot and who was not asked to transfer remained at the Aurora location for a short period, then submitted her resignation.

60. After she put in her notice, Jefferson Hills offered her part-time employment at the Aurora facility, which she declined.

61. Jefferson Hills told the white employee who had injured her knee and had been off work that she would need to transfer to Lakewood, but the employee asked for additional time to confer with her physician about the restrictions.

62. Ms. Cartaya told this employee that she would need to either submit her resignation that day or would be put on the schedule at the Lakewood facility.

63. The employee did not submit a resignation, but was later told she was terminated for missing her shift, even though she was never given a schedule for work at the Lakewood facility.

64. Jefferson Hills transferred the white employee who had injured her neck and had surgery from Aurora to another location it operated, and subsequently to Lakewood after Jefferson Hills received Ms. Calhoun's initial EEOC charge.

65. Ms. Calhoun amended her EEOC charge on or about July 29, 2019.

66. As a result of Defendant's discriminatory and retaliatory termination of Ms. Calhoun, she has suffered damages, including lost past and future wages and other employment benefits; lost future earning capacity and lost or diminished future employment benefits;

diminished reputation, and other pecuniary losses; and emotional pain and suffering, humiliation, mental anguish, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

**FIRST CLAIM FOR RELIEF**
(Race Discrimination in Violation of Title VII)

67. The foregoing allegations are realleged and incorporated by reference.

68. Defendant, in violation of Title VII, discriminated against Ms. Calhoun in the terms and conditions of her employment because of her race.

69. Defendant, in violation of Title VII, terminated Ms. Calhoun because of her race.

70. As a direct and proximate result of Defendant's discrimination against Ms. Calhoun, she has suffered damages as set forth in paragraph 66 above.

71. Defendant's employment practices complained of above were done with malice or with reckless indifference to Ms. Calhoun's federally protected rights.

**SECOND CLAIM FOR RELIEF**
(Retaliation in Violation of Title VII)

72. The foregoing allegations are realleged and incorporated by reference.

73. Ms. Calhoun participated in protected activity by opposing Defendant's discrimination against her based on her race.

74. Ms. Calhoun also filed a charge of discrimination with the EEOC before she was terminated.

75. As a result of Ms. Calhoun's protected opposition to discrimination, Defendant terminated her.

76. As a direct and proximate result of Defendant's retaliation against Ms. Calhoun, she has suffered damages as set forth in paragraph 66 above.

77. Defendant's employment practices complained of above were done with malice or with reckless indifference to Ms. Calhoun's federally protected rights.

**THIRD CLAIM FOR RELIEF**
(Disability Discrimination in Violation of the Americans with Disabilities Act)

78. The foregoing allegations are realleged and incorporated by reference.

79. At all relevant times, Ms. Calhoun was disabled within the meaning of 42 U.S.C. §12102(1)(A), (B), and/or (C), as a result of her medical condition.

80. Because of Ms. Calhoun's medical condition, she was substantially limited in performing major life activities, including lifting.

81. Ms. Calhoun was qualified to perform the duties of her position with Defendants with or without a reasonable accommodation.

82. Defendant failed to protect Ms. Calhoun from attitudes, prejudices, and stereotypic assumptions about her disability and perceived disability that were not indicative of her actual abilities.

83. Defendant, in violation of the ADA, discriminated against Ms. Calhoun in the terms and conditions of her employment because she was disabled, had a record of a disability, or was regarded as disabled.

84. Defendant, in violation of the ADA, terminated Ms. Calhoun because she was disabled, had a record of a disability, or was regarded as disabled.

85. As a direct and proximate result of Defendant's discrimination against Ms. Calhoun, she has suffered damages as set forth in paragraph 66 above.

86. Defendant's employment practices complained of above were done with malice or with reckless indifference to Ms. Calhoun's federally protected rights.

## FOURTH CLAIM FOR RELIEF
(Retaliation in Violation of the Americans with Disabilities Act)

87. The foregoing allegations are realleged and incorporated by reference.

88. Ms. Calhoun participated in protected activity by opposing Defendant's discrimination against her.

89. Ms. Calhoun also filed a charge of discrimination with the EEOC before she was terminated.

90. As a result of Ms. Calhoun's protected opposition to discrimination, Defendant adversely altered the terms and conditions of her employment, including by terminating her.

91. As a direct and proximate result of Defendant's retaliation against Ms. Calhoun, she has suffered damages as set forth in paragraph 66 above.

92. Defendant's employment practices complained of above were done with malice or with reckless indifference to Ms. Calhoun's federally protected rights

## DEMAND FOR JUDGMENT

Plaintiff Michelle Calhoun requests judgment in her favor against Defendant for:

A. All damages caused by Defendant's unlawful conduct, including past and future pecuniary, non-pecuniary losses and compensatory damages;

B.  A declaratory judgment that the practices complained of herein are unlawful and in violation of the ADA and Title VII;

C.  Exemplary damages;

D.  Reasonable attorney fees;

E.  Prejudgment and postjudgment interest;

F.  Costs; and

G.  Such other relief as the Court deems proper.

## JURY DEMAND

Plaintiff demands a jury trial on all issues so triable.

Dated: December 1, 2020

*s/ David Lichtenstein*
David Lichtenstein
Matt Molinaro
Law Office of David Lichtenstein, LLC
1556 Williams St., Suite 100
Denver, CO 80218
Telephone: (303) 831-4750
Facsimile: (303) 863-0835
dave@lichtensteinlaw.com
matt@lichtensteinlaw.com
*Attorneys for Plaintiff*

Plaintiff's Address:
17203 E. Ohio Place, #301
Aurora, CO 80017