IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 20-cv-03544-KLM

MICHELLE CALHOUN,

    Plaintiff,

v.

JEFFERSON HILLS CORPORATION, a Colorado nonprofit corporation,

    Defendant.
_____

## ORDER
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

    This matter is before the Court on Plaintiff's **Motion for Partial Summary Judgment** [#37] ("Plaintiff's Motion"), and on Defendant's **Motion for Summary Judgment** [#38] ("Defendant's Motion").  Defendant filed a Response [#40] in opposition to Plaintiff's Motion [#37], and Plaintiff filed a Reply [#45].  Plaintiff filed a Response [#41] in opposition to Defendant's Motion [#38], and Defendant filed a Reply [#44].  The Court has reviewed the Motions, the Responses, the Replies, the entire case file, and the applicable law, and is sufficiently advised in the premises.[1]  For the reasons set forth below, Plaintiff's Motion [#37] is **GRANTED in part and DENIED in part** and Defendant's Motion [#38] is **DENIED**.

## I.  Background

    The following facts are undisputed, unless specifically noted.  *See generally Pl.'s Motion* [#49] at 2-6 ¶¶ 1-16; *Def.'s Motion* [#50] at 3-9 ¶¶ 1-26; *Pl.'s Response* [#62] at 5-

_____

[1]  This case has been referred to the undersigned for all purposes pursuant to D.C.COLO.LCivR 40.1(c) and 28 U.S.C. § 636(c), on consent of the parties.  *See* [#13, #14].

10 ¶¶ 1-26; *Def.'s Response* [#58] at 3-10 ¶¶ 1-16; *see also Pl.'s Reply* [#63] at 1-6 ¶¶ 2-16.  Disputed facts are addressed in the Analysis section below, as necessary.

Defendant is a non-profit organization which includes a residential childcare facility ("RCCF") treating at-risk children in need of mental health services.  In 2019, Defendant had three facilities: the Lakewood RCCF facility at 421 Zang Street in Lakewood, Colorado; the Aurora RCCF facility at 1290 South Potomac in Aurora, Colorado; and administrative offices at the corner of Hampden Avenue and Wadsworth Boulevard in Denver, Colorado.  Now, Defendant only operates out of the Lakewood facility.

An RCCF is licensed through a state application process and is subject to state regulations requiring compliance with staffing ratios and standards.  State licensure requires different staffing ratios based on the age of the children and the times of day.  For example, for nighttime staff, state regulations require one staff member for every twenty children, i.e., a ratio of 1:20.  Defendant tried to maintain staff ratios between 1:4 and 1:6 during the day and 1:10 overnight for the positions of milieu counselors and supervisors.  In transportation environments, the staffing ratio was 1:1.  Not every staff member counts towards the staff ratio; only direct care staff or milieu counselors and supervisors count toward Defendant's staffing ratios.

To comply with state requirements, all staff who work directly with children must complete Crisis Prevention Institute ("CPI") training.  CPI training teaches individuals how to perform physical restraints.  Defendant uses the CPI national model which requires multiple people to safely complete a restraint.  Before July 2019, Defendant had sufficient

staff at the Aurora facility to ensure that mandatory and self-imposed staffing ratios were met and physical restraints could be properly performed.

Plaintiff is an individual who resides in Colorado.  She was hired by Defendant on January 28, 2007, as a transporter at the Aurora facility.  Plaintiff completed CPI training as a transporter and performed four restraints during her employment with Defendant. Plaintiff asserts that she was not required to perform the supportive role of milieu aide during her tenure as a transporter, except when she "responded to restraints or codes on the unit."   She describes this milieu aide function as: "if [milieu counselors] need assistance, if they're short-staffed.  If they're short-staffed you may have to step in at any time."

During her time with Defendant, Plaintiff suffered a total of three workplace injuries which resulted in restrictions that precluded her from performing physical restraints.  Two of Plaintiff's workplace injuries were suffered while she was performing or assisting in a physical restraint.  Plaintiff does not recall how long she was restricted from performing restraints as a result of the first two workplace injuries.  Plaintiff suffered her third and final workplace injury, which forms the basis of her alleged disability at issue in this case, on September 12, 2018.  Plaintiff was restricted from performing restraints from that date until Defendant terminated her employment in July 2019.  Plaintiff was not asked to perform physical restraints while medically restricted from doing so.

Plaintiff testified that "Transporter" was the only official title she held with Defendant.   Plaintiff also testified that she read, understood, and signed a milieu counselor job description on January 21, 2016.  The milieu counselor job description lists CPI under "Essential Duties and Responsibilities" "to ensure safety of residents and staff."

Plaintiff agreed that CPI is an "essential duty of someone that was working on milieu," but testified that she "did not work milieu."

The Aurora facility relied on public funding, either from the state itself or from federal funding which flowed through the state.   In July 2019, Defendant decided to significantly downsize the Aurora facility due to substantial financial losses and lack of referrals.   On July 19, 2019, Defendant closed its girls' residential unit there, and Defendant closed the Aurora facility completely at the end of October 2019 because the state was providing insufficient funding for Defendant to continue operating the remaining RCCF program there.   Defendant maintained its preferred staffing ratios at the Aurora facility through its closure in October 2019.   Defendant also labored to retain as many employees as it could by opening positions in the Lakewood facility and working with employees to fill those positions and create acceptable schedules.

With the reduction in staff, Defendant had to determine which staff were able to perform restraints so that it could maintain its staffing ratios and protect the safety of staff and youth.   Defendant first requested Plaintiff's transfer to the Lakewood facility on July 16, 2019.   Plaintiff admits that Defendant requested her transfer because it was "removing people from that location that couldn't do restraints."   Plaintiff testified that she did not initially agree to the transfer to the Lakewood facility because she had concerns about her grandchildren because she drove them to school, but "didn't disagree with them" about the transfer.   Plaintiff agreed to transfer to the Lakewood facility as a milieu counselor at a July 19, 2019 meeting.

Defendant worked to keep Plaintiff's Monday-through-Friday schedule when Plaintiff transferred to the Lakewood facility and gave her the first choice of shifts for

employees transferring to the Lakewood facility due to her seniority.  Plaintiff was notified that she could return to the Aurora facility if her workplace restriction was lifted.  Defendant notified the Lakewood facility of Plaintiff's scheduled paid time off for July 25, 2019, so that Plaintiff could see her physician regarding her workplace restrictions.  Defendant also requested that four other employees transfer from the Aurora facility to the Lakewood facility because they were unable to perform restraints: Sonia Bhasin ("Bhasin"); Wendy Brock ("Brock"), Jennifer Cochran ("Cochran"), and Kira McNellis ("McNellis").  Plaintiff is a black woman, and she admits that Ms. Bhasin, Ms. McNellis and Ms. Cochran are all Caucasian.

Defendant permitted Plaintiff to enter the Aurora facility the weekend of July 20-21, 2019, to clear her office and prepare for the transfer.  Plaintiff testified that she packed up her office the morning of July 20 after speaking with a few of Defendant's employees, left the Aurora facility to prepare for a family celebration, and then returned later in the afternoon with her husband to finish clearing out her office.

Around this time, Defendant received an oral allegation from another employee that Plaintiff had used one of Defendant's company vehicles for personal use.  Karen O. Yarberry ("Yarberry"), Defendant's Executive Director, began her investigation into the veracity of the allegation by interviewing Plaintiff.  After completing the investigation, Ms. Yarberry decided to terminate Plaintiff's employment on Tuesday, July 30, 2019, before 10:34 a.m., for the purported reason of violating Defendant's vehicle use policy.  Plaintiff received notice of her termination on July 31 via a telephone conversation with Defendant's Human Resources Manager Tina Cartaya ("Cartaya") and Finance Director

Patricia Rivers ("Rivers").  Defendant did not replace Plaintiff when her employment was terminated.

Plaintiff filed this lawsuit on December 1, 2020, asserting four claims against Defendant: (1) discrimination under Title VII; (2) retaliation under Title VII; (3) discrimination under the Americans with Disability Act ("ADA"); and (4) retaliation under the ADA.  *Compl.* [#1] ¶¶ 67-92.  Here, Defendant seeks entry of summary judgment in its favor on all claims.  *Def.'s Motion* [#38] at 1.  Plaintiff seeks judgment in her favor on specific portions of her claims under both statutes.  *Pl.'s Motion* [#37] at 1.

## II.  Standard of Review

The purpose of a motion for summary judgment pursuant to Fed. R. Civ. P. 56 is to assess whether trial is necessary.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Pursuant to Fed. R. Civ. P. 56(a), summary judgment should be entered if the pleadings, the discovery, any affidavits, and disclosures on file show "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  An issue is genuine if the evidence is such that a reasonable jury could resolve the issue in favor of the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A fact is material if it might affect the outcome of the case under the governing substantive law.  *Id.*

The burden is on the movant to show the absence of a genuine issue of material fact.  *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670-71 (10th Cir. 1998) (citing *Celotex*, 477 U.S. at 323).  When the movant does not bear the ultimate burden of persuasion at trial, the "movant may make its prima facie demonstration [of the absence of a genuine issue of material fact] simply by pointing out to the [C]ourt a lack of evidence for the

nonmovant on an essential element of the nonmovant's claim." *Id.* at 671.  If the movant carries the initial burden of making a prima facie showing of a lack of evidence, the burden shifts to the nonmovant to put forth sufficient evidence for each essential element of his claim such that a reasonable jury could find in his favor.  *See Anderson*, 477 U.S. at 248. The nonmovant must go beyond the allegations and denials of his pleadings and provide admissible evidence, which the Court views in the light most favorable to him.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Panis v. Mission Hills Bank, N.A.*, 60 F.3d 1486, 1490 (10th Cir. 1995) (citing *Celotex*, 477 U.S. at 324).  Conclusory statements based merely on conjecture, speculation, or subjective belief are not competent summary judgment evidence.  *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004). The nonmoving party's evidence must be more than "mere reargument of [his] case or a denial of an opponent's allegation" or it will be disregarded.  *See* 10B Charles Alan Wright et al., *Federal Practice and Procedure* § 2738 (4th ed. 2017).  *See also Boyz Sanitation Serv., Inc. v. City of Rawlins, Wyo.*, 889 F.3d 1189, 1195 (10th Cir. 2018) ("Where, as here, we are presented with cross-motions for summary judgment, we must view each motion separately, in the light most favorable to the non-moving party, and draw all reasonable inferences in that party's favor."); *Christian Heritage Acad. v. Okla. Secondary Sch. Activities Ass'n*, 483 F.3d 1025, 1030 (10th Cir. 2007) ("Cross motions for summary judgment are to be treated separately; the denial of one does not require the grant of another.").

Only documents that meet the evidentiary requirements of Fed. R. Civ. P. 56 may be considered for purposes of summary judgment.  Rule 56(c) provides that:

(1) A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials[.]
>
> . . .
>
> (3) Materials Not Cited. The court need consider only the cited materials, but it may consider other materials in the record.
>
> (4) Affidavits or Declarations. An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

Fed. R. Civ. P. 56(c)(1)-(4).  *See also Jacklovich v. Simmons*, 392 F.3d 420, 425 (10th Cir. 2004) ("On cross-motions for summary judgment, . . . we must view the inferences to be drawn from affidavits, attached exhibits and depositions in the light most favorable to the party that did not prevail.").

### III.  Analysis

At the outset, the Court notes three affirmative statements made by Plaintiff regarding her claims which help to clarify the following discussion.   First, Plaintiff "confesses her Title VII discrimination claim" and offers "to voluntarily dismiss her Title VII discrimination claim."  *Response* [#41] at 18 n.4.  Second, Plaintiff affirms that she is not arguing under any claim that Defendant's proposal to transfer her to a new location was, in and of itself, an adverse action.  *Id.*  Third, Plaintiff affirms that she is not advancing a claim against Defendant based on failure to accommodate her disability.  *Id.*

### A.      Title VII Retaliation

Title VII "makes it unlawful for an employer to retaliate against an employee 'because she has opposed any practice made an unlawful employment practice by this subchapter.'"  *Brown v. Titan Protection & Consulting*, No. 21-3122, 2022 WL 1014154, at *2 (10th Cir. Apr. 5, 2022) (quoting *Khalik v. United Air Lines*, 671 F.3d 1188, 1192

(10th Cir. 2012) (brackets omitted) (quoting 42 U.S.C. § 2000e-3(a)).  "A plaintiff can . . .

establish retaliation either by directly showing that retaliation played a motivating part in

the employment decision, or indirectly by relying on the three-part *McDonnell Douglas*

framework."  *Brown*, 2022 WL 1014154, at *2 (quoting *Khalik*, 671 F.3d at 1192).  Here,

Plaintiff concedes that she "does not have direct evidence" of retaliation, *see Response*

[#41] at 18, and therefore relies on the three-step framework of *McDonnell Douglas*.  For

a Title VII retaliation claim, at the first step, "a plaintiff must show (1) that she engaged in

protected opposition to discrimination, (2) that a reasonable employee would have found

the challenged action materially adverse, and (3) that a causal connection existed

between the protected activity and the materially adverse action."  *Brown*, 2022 WL

1014154, at *2 (quoting *Khalik*, 671 F.3d at 1193 (brackets and internal quotation marks

omitted)).

### 1.    Step One: Prima Facie Case

#### a.    Element One: Protected Opposition

Plaintiff argues that she engaged in protected activity under Title VII in a July 18,

2019 letter and related July 19, 2019 meeting, and in the filing of her July 25, 2019 Charge

of Discrimination with the Equal Employment Opportunity Commission ("E.E.O.C.").[2]  *Pl.'s*

*Motion* [#37] at 16-17.

The Court begins with the original Charge of Discrimination that Plaintiff filed with

the E.E.O.C. on July 25, 2019.  *See* [#37-14] at 1.  This Charge asserts discrimination

based on race, stating that Plaintiff's race is black, that "two White employees with similar

---

[2]  Defendant does not seek entry of summary judgment in its favor based on this portion of Plaintiff's Title VII retaliation claim.  *See Def.'s Motion* [#38] at 32-35.  Plaintiff has not moved for entry of summary judgment on any other portion of her Title VII retaliation claim.  *See Pl.'s Motion* [#37] at 16-17.

restrictions have not been required to transfer to a new location," and that "a White employee was kept on as Transporter, even though he only has several months of experience in that position, whereas I have many years' experience." *Id.* The filing of a formal charge with the E.E.O.C. is unequivocally protected activity under Title VII. *See E.E.O.C. v. PVNF, L.L.C.*, 487 F.3d 790, 804 (10th Cir. 2007). Defendant offers no argument to the contrary or any evidence that the July 25, 2019 Charge of Discrimination is not protected activity.[3] *See Response* [#40] at 30-33. Thus, in the absence of a genuine issue of material fact, the Court holds as a matter of law that Plaintiff's filing of the July 25, 2019 Charge of Discrimination is protected activity for purposes of her Title VII retaliation claim.

Next, Plaintiff relies on the following July 18, 2019 letter she e-mailed to two of Defendant's staff:

> Dear Deputy Director Michael Barrows sand [sic] [Human Resources Manager] Tina Cartaya.
>
> Thank you for meeting with me on Tuesday July 16th.
> You requested my decision regarding the unit staff positions available in Lakewood.
>
> Before I am able to make this decision, I want to be sure I am understanding my full options.
>
> Based on our conversation, I understand that you are saying that I can no longer work in Aurora because of medical restrictions. Is that the case?
>
> As it is now, it is not clear to me that there are any other reasons besides medical restrictions to send me to Lakewood.

---

[3] In fact, in its own Motion [#38], Defendant appears to explicitly concede that the E.E.O.C. Charge is protected activity, although, for reasons unknown, Defendant did not so state in its Response to Plaintiff's Motion [#37] regarding this issue. *See Def.'s Motion* [#38] at 35.

Which brings me to a question that I want to be sure I understand.  Are you saying that there are no other employees that are working in Aurora that are not under medical restrictions?

I have another question.

Since my workman's comp treatment plan is about to be evaluated, will you be following Rule 6 in your procedures?

In addition, since it's my medical review with my doctors in a few short weeks, isn't this Friday to have a decision to you a little premature?

I am not refusing, but I need a little more clarity from you and from the doctors to make a [sic] educated decision.

Thank you for your response,
Michelle
7/18/2019

*Pl.'s Ex. 11, July 18, 2019 E-mail from Pl. to Def.* [#37-11] at 1.  As Defendant argues, *see Response* [#40] at 31, a "vague reference to discrimination . . . without any indication that this misconduct was motivated by [a] category protected by Title VII[ ] does not constitute protected activity and will not support a retaliation claim."  *Anderson v. Acad. Sch. Dist. 20*, 122 F. App'x 912, 916 (10th Cir. 2004).  Here, Plaintiff neither mentions nor implies racial discrimination in this letter, which is required under Title VII to meet this element of her prima facie case.  *See Lamb v. Montrose Cnty. Sheriff's Off.*, No. 19-1275, 2022 WL 487105, at *4 (10th Cir. Feb. 17, 2022) (citing *Morris v. McCarthy*, 825 F.3d 658, 673 (D.C. Cir. 2016) (dismissing retaliation claim because employee's complaints did not "oppose any discrete practice that [the plaintiff] reasonably could have believed discriminated on the basis of race, color, religion, sex, or national origin"); *EEOC v. Crown Zellerbach Corp.*, 720 F.2d 1008, 1013 (9th Cir. 1983) ("The employee's statement cannot be 'opposed to an unlawful employment practice' unless it refers to some practice by the employer that is allegedly unlawful.").  "Put another way, there must be 'some perceptible

connection to the employer's alleged illegal employment practice,' and 'it must be possible to discern from the context of the statement that the employee opposes an unlawful employment practice.'"  *Lamb*, 2022 WL 487105, at *4 (quoting *Curay-Cramer v. Ursuline Acad. of Wilmington, Del., Inc.*, 450 F.3d 130, 135 (3d Cir. 2006); citing *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1313 (6th Cir. 1989) (holding "that a vague charge of discrimination in an internal letter or memorandum is insufficient to constitute opposition to an unlawful employment practice").  No reasonable jury could find that this correspondence constitutes protected activity under the applicable legal standard.  Thus, the Court holds as a matter of law that Plaintiff's July 18, 2019 correspondence is not protected activity for purposes of her Title VII retaliation claim.

Finally, Plaintiff references the July 19, 2019 meeting which occurred the day after she sent the e-mail letter discussed above.  *Pl.'s Motion* [#37] at 16.  The summary of the substance of the meeting, written by Tina Cartaya, does not mention discrimination or anything which could be construed as responding to verbal statements by Plaintiff regarding discrimination.  *See* [#37-11] at 2.  However, Plaintiff provides a declaration which states:

> I was surprised when Jefferson Hills told me I was required to transfer to Lakewood.  I was told that I was required to transfer immediately.  I did not know of anyone else who was required to transfer.  I had been picked first for transfer.  I believed that I was being singled out for discrimination as a black woman with a physical impairment.  I objected to the discrimination by asking whether others were being forced to transfer, particularly those non-black employees with physical impairments.  Jefferson Hills did not answer.

*Pl.'s Ex. 3, Decl. of Pl.* [#37-3] ¶ 6.  On summary judgment, the Court "view[s] the facts in the light most favorable to the non-moving party and resolve[s] all factual disputes and reasonable inferences in its favor."  *Estate of Booker v. Gomez*, 745 F.3d 405, 411 (10th

Cir. 2014).  However, "the non-moving party . . . must still identify sufficient evidence requiring submission to the jury to survive summary judgment."  *Piercy v. Maketa*, 480 F.3d 1192, 1197 (10th Cir. 2007).  Here, Defendant has provided no argument regarding the July 19 meeting, nor has it directed the Court's attention to evidence sufficient to create a genuine issue of material fact.  *See Response* [#40] at 30-31.  Thus, the Court is left to consider only Plaintiff's interpretation of the evidence.  Although this evidence is somewhat vague regarding Plaintiff's opposition to protected discrimination, the Court holds that Plaintiff has provided evidence sufficient to show activity protected by Title VII and that Defendant failed to demonstrate the existence of a genuine issue of material fact on this issue.  Therefore, the Court holds as a matter of law that Plaintiff's conversation at the July 19, 2019 meeting is protected activity for purposes of her Title VII retaliation claim.

Accordingly, Plaintiff's Motion [#37] is **granted** to the extent that the Court holds that both the July 25, 2019 Charge of Discrimination and the July 19, 2019 meeting constitute protected activity for purposes of Plaintiff's Title VII retaliation claim.  Plaintiff's Motion [#37] is **denied** to the extent that the Court holds that the July 18, 2019 correspondence does not constitute protected activity for purposes of Plaintiff's Title VII retaliation claim.

### b.    Element Three: Causation

Defendant moves for entry of summary judgment in its favor based on the third element of Plaintiff's prima facie case regarding a Title VII retaliation claim.  *Def.'s Motion* [#38] at 33.

The parties impermissibly collapse the *McDonnell Douglas* framework with respect to causation, Defendant's purported legitimate, non-discriminatory reason for terminating Plaintiff's employment,[4] and Plaintiff's proffered evidence regarding pretext.  Plaintiff is correct that *McDonnell Douglas* was "never intended to be rigid, mechanized, or ritualistic." *Response* [#41] at 19 n.5 (quoting *U.S. Post. Serv. Bd. of Govs. v. Aikens*, 460 U.S. 711, 715 (1983)).  Further, often, the causation element of a prima facie case and the pretext burden of the third step of *McDonnell Douglas* may utilize some of the same evidence in support of each. *See, e.g.*, *Rodriguez v. Brown*, No. 18-cv-02919-KLM, 2021 WL 877715, at *18 (D. Colo. Mar. 8, 2021).  However, here, the parties essentially eviscerate the *McDonnell Douglas* framework, without good reason, by muddling their arguments on the various points—precisely what the *McDonnell Douglas* framework is intended to prevent.  Nevertheless, the Court has examined the arguments in an attempt to extract those relating to the causation analysis versus those which are more appropriately discussed later in the analysis.

The Court first addresses causation with respect to Plaintiff's July 25, 2019 Charge of Discrimination.  Defendant argues that this element is not met because Defendant "did not know of the [Charge] until after [Defendant] had decided to terminate Plaintiff." *Motion* [#38] at 34.  In support, Defendant points to a declaration submitted by Ms. Yarberry, Defendant's Executive Director, who states:

> After concluding my investigation into the allegations against Plaintiff, I decided to terminate Plaintiff by the morning of Tuesday, July 30, 2019, based on my finding that she had violated Jefferson Hills policy by using a company vehicle for personal use.  I had communicated that decision to other Jefferson Hills employees by 10:34AM on July 30, 2019, who then

---

[4] Again, Plaintiff explicitly states that she is not asserting that "the transfer was an adverse action" or that Defendant "failed to accommodate her" disability. *Response* [#41] at 18 n.4.

corresponded by email about cutting Plaintiff's final paycheck.  *See* Rivers
to Jones July 30, 2019 Email Correspondence, a true and accurate copy of
which is attached hereto as Exhibit 3.

Jefferson Hills did not receive notice of Plaintiff's [E.E.O.C.] complaint until
11:03AM on July 30, 2019.  *See* U.S. EEOC to Cartaya July 30, 2019 Email
Correspondence, a true and accurate copy of which is attached hereto as
Exhibit 4.

*Def.'s Ex. D., Decl. of Karen O. Yarberry* [#38-4] ¶¶ 6-7 (citing *id.* at 14-17).

Plaintiff provides no legal argument or evidence in opposition to Defendant's

chronology on this point except in connection with the parties' recitation of material facts.

*See Response* [#41] 7-8 ¶¶ 60-61.  Relying on Ms. Yarberry's statement and e-mail

exhibits cited above, Defendant originally stated the following: (1) "[a]fter completing the

investigation, Ms. Yarberry decided to terminate Plaintiff on Tuesday, July 30, 2019

before 10:34AM," and (2) "Jefferson Hills did not receive notice of Plaintiff's EEOC

complaint until 11:03AM on July 30, 2019."  *Id.*  Without providing any legal authority or

supported argument, Plaintiff responds that the first statement is inadmissible, that Ms.

Yarberry's testimony is self-serving, and that a jury is not required to believe it.  The Court

is not inclined to, and generally should not, do the legal research for parties where they

have not first provided adequate argument and legal authority themselves.  *See Bronson*

*v. Swensen*, 500 F.3d 1099, 1104 (10th Cir. 2007) (stating that a court may decline to

consider arguments inadequately presented)).  Here, though, the Court finds that Ms.

Yarberry's statements are supported by evidence which Plaintiff has failed to adequately

oppose.  Plaintiff does attempt to create an issue of fact by disputing Defendant's second

statement, saying that "Jefferson Hills did not receive via *e-mail* until 11:03 AM."

*Response* [#41] 8 ¶ 61.  Although Plaintiff appears to imply that Defendant may have

received notice of the Charge of Discrimination prior to its e-mail receipt of the Charge at

11:03 a.m. on July 30, this amounts to mere speculation in the absence of any evidence to the contrary. In short, although the Charge of Discrimination was filed with the E.E.O.C. on July 25, there is no genuine issue of material fact that Defendant had decided to terminate Plaintiff's employment before Defendant received notice of the filing. Accordingly, Defendant is entitled to entry of summary judgment in its favor to the extent Plaintiff's Title VII retaliation claim is premised on her July 25, 2019 Charge of Discrimination.

However, as noted above, Plaintiff has asserted two other bases for her Title VII retaliation claim: the July 18, 2019 correspondence and the July 19, 2019 meeting. Pursuant to section III.A.1.a., the Court has found that the July 18, 2019 correspondence does not constitute protected activity. Thus, in light of this conclusion, Plaintiff's Title VII retaliation claim fails to the extent it is based on this letter. The Court further has already determined that Plaintiff's statements at the July 19, 2019 meeting constitute protected activity. Thus, the Court continues with its analysis to determine whether the causation element is met as to the July 19, 2019 meeting.

As a prerequisite to a showing of causation, a plaintiff must present evidence from which a reasonable jury may conclude that the person taking the adverse action had knowledge of her protected activity. *See Montes v. Vail Clinic Inc.*, 497 F.3d 1160, 1176 (10th Cir. 2007). Here, Defendant was clearly in possession of Plaintiff's July 18, 2019 correspondence at the time of the July 19, 2019 meeting, based on the notes written by Ms. Cartaya in connection with that meeting on a copy of Plaintiff's correspondence from the day before. *See* [#37-11] at 2.

To establish the causation element of a prima facie case for Title VII retaliation, the plaintiff must provide "evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action." *Burrus v. United Tel. Co. of Kan.*, 683 F.2d 339, 343 (10th Cir. 1982). "[W]e have held that a one and one-half month period between protected activity and adverse action may, by itself, establish causation." *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999)). Here, Plaintiff received notice of her termination on July 31, 2019, less than two weeks after the July 19 action at issue. This is well within the time frame between protected activity and adverse action which "may, by itself, establish causation." *Anderson*, 181 F.3d at 1179. No evidence has been provided to create a genuine issue of material fact here, and Defendant is therefore not entitled to summary judgment on this element of Plaintiff's prima facie case.

Accordingly, Defendant's Motion [#38] is **granted** to the extent that Plaintiff's Title VII retaliation claim is based on her July 25, 2019 Charge of Discrimination and the July 18, 2019 correspondence, and summary judgment is entered in Defendant's favor on those facts. Defendant's Motion [#38] is **denied** to the extent that Plaintiff's Title VII retaliation claim is based on the July 19, 2019 meeting, and summary judgment is denied on those facts.

### 2.    Step Two: Legitimate, Non-retaliatory Reason

Defendant asserts that it terminated Plaintiff's employment "because it determined Plaintiff violated a terminable company policy of [Defendant]," i.e., Plaintiff used Defendant's company vehicle for personal use without permission. *Motion* [#38] at 36; *Def.'s Ex. A*, [#38-1] at depo. 41-45, 51-52, 70; *Def.'s Ex. 5 to Ex. A* [#38-1] at 42; *Def.'s*

*Ex. 6 to Ex. A* [#38-1] at 43-44.  Although Plaintiff argues that this reason is pretextual, Plaintiff does not offer legal authority or argument that this reason is not a legitimate, non-retaliatory reason sufficient to meet this step of the *McDonnell Douglas* burden-shifting test.  According, there appears to be no genuine issue of material fact on this point, and the Court finds that Defendant has met its burden of pointing to a legitimate, non-retaliatory reason for its termination of Plaintiff's employment.

### 3.    Step Three: Pretext

At this step of the *McDonnell Douglas* framework, the Court examines "whether a reasonable juror could find that the [employer's] proffered reason for terminating [the plaintiff] was pretextual."  *Litzinger v. Adams Cnty. Coroner's Office*, 25 F.4th 1280, 1287 (10th Cir. 2022).  "'A plaintiff demonstrates pretext by showing either that a discriminatory reason more likely motivated the employer or that the employer's proffered explanation is unworthy of credence.'"  *Id.* (quoting *Zamora v. Elite Logistics, Inc.*, 478 F.3d 1160, 1166 (10th Cir. 2007)).  "Pretext may be established by revealing 'weaknesses, implausibilities, inconsistencies, incoherence, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable fact finder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons.'"  *Litzinger*, 25 F.4th at 1287 (quoting *Jencks v. Modern Woodmen of Am.*, 479 F.3d 1261, 1267 (10th Cir. 2007)).

Importantly, "[t]o support an inference of pretext, the plaintiff 'must produce evidence that the employer did more than get it wrong.'"  *Litzinger*, 25 F.4th at 1287 (quoting *Johnson v. Weld County, Colorado*, 594 F.3d 1202, 1211 (10th Cir. 2010)).  "The plaintiff 'must come forward with evidence that the employer didn't really believe its

proffered reasons for action and thus may have been pursuing a hidden discriminatory agenda.'" *Litzinger*, 25 F.4th at 1287 (quoting *Johnson*, 594 F.3d at 1211).  Plaintiff points to the following, somewhat overlapping, evidence that Defendant's proffered reason for termination, i.e., violation of company policy involving use of a company vehicle, is pretextual.

First, Plaintiff asserts that Defendant did not uniformly apply its vehicle use policy. *Response* [#41] at 23-24 (citing *Pl.'s Ex. 19, Depo. of Pl.* [#41-2] at 58:9-61:20; *Pl.'s Ex. 20, Decl. of Pl.* [#41-3] ¶¶ 1-3).  Although Plaintiff reported issues with gaps in mileage logs submitted by other employees to Defendant, Defendant did not investigate those allegations or review mileage records as a result.  Further, Defendant did not maintain or enforce policies related to use of the van, and it did not have a written procedure for using a van.  In 2015, it had no procedures for tracking a van.  Then, Defendant noticed that a van was missing overnight, which Plaintiff had taken for maintenance.  As a result, Plaintiff—not Defendant's management—created and implemented a system for logging the use and mileage of the vans.  Compliance with the system by other employees was lax, however, and when Plaintiff reported this to Defendant's management, nothing was done.  Defendant did not enforce any violations of the vehicle policy, such as other employees not recording mileage and other employees not returning the keys to the lockbox.  Plaintiff specifically reported to Defendant's management that she found vans without gas on Monday, even when they had full tanks of gas on Friday, but Defendant did not investigate.  Nothing in Defendant's policy requires a "formal" allegation to be made against an employee, and Defendant does not explain why Plaintiff's repeated reports did not result in investigations.  Defendant applied the policy only to Plaintiff,

ignoring previous potential unauthorized usage of its vans.  Plaintiff asserts that, because of the disparate application of Defendant's vehicle use policy, a jury may infer that retaliation was the real reason why Defendant terminated Plaintiff's employment.

Second, Plaintiff asserts that Defendant did not retain any contemporaneous record of its "investigation" into Plaintiff's purported van use, allowing it to craft its records to support its allegations.  *Response* [#41] at 29-30 (relying on *Pl.'s Ex. 17, Decl. of Wendy Brock* [#37-17] ¶ 8; *Pl.'s Ex. 18, Rule 30(b)(6) Depo. of Def.* [#41-1] at 41:7-9, 51:24-52:2, 58:16-23; *Pl.'s Ex. 19, Depo. of Pl.* [#41-2] at 42:11-43:5, 58:9-61:20; *Pl.'s Ex. 20, Decl. of Pl.* [#41-3] ¶¶ 1-3, 7-8; *Pl.'s Ex. 23, Reason for Separation* [#41-6]; *Pl.'s Ex. 25, 2015 Note by Pl.* [#41-8]; *Def.'s Ex. A, Allegation of Vehicle Usage for Personal Use* [#38-1] at 43-44).  Ms. Yarberry's summary was created after she made the decision to terminate Plaintiff's employment.  Defendant does not have any actual notes of the investigation and, in fact, destroyed them.  Ms. Yarberry drafted the summary after the conclusion of her investigation, allowing her to craft the summary to match her desired outcome rather than an accurate record of the interviews.  Plaintiff asserts that a jury should be skeptical of Ms. Yarberry's summary as documenting the actual investigation, and that Defendant has crafted a theory to justify Plaintiff's termination after the fact.  Further, Plaintiff asserts that Defendant's written responses regarding Plaintiff's unemployment claim show that Defendant overstated its claims against Plaintiff in an effort to avoid liability for her unemployment benefits.  For example, Defendant then claimed it had multiple witnesses who saw Plaintiff driving the van, but now admits it does not.  In addition, it claimed that Defendant investigated Plaintiff's use of a van in prior

months, but now admits it did not.  Plaintiff avers that a jury may infer that Defendant is doing the same here.

Third, Plaintiff asserts that Ms. Yarberry's summary is actually inaccurate. *Response* [#41] at 30-31 (citing, in part, *Pl.'s Ex. 18, Rule 30(b)(6) Depo. of Def.* [#41-1] at 44:25-45:5, 47:22-48:8, 49:25-51:3; *Def.'s Ex. A, Written Allegation* [#38-1] at 42; *Def.'s Ex. A, Allegation of Vehicle Usage for Personal Use* [#38-1] at 43-44).  Plaintiff points to an apparent contradiction between Ms. Yarberry's notes and testimony, i.e, the timeline of when Ms. Beauford first alleged that Plaintiff used the van on the weekend of July 13. In her written *summary*, Ms. Yarberry claims that Ms. Beauford reported the July 13 use *before* the weekend of July 20, and that this report allegedly prompted Defendant to check the vehicle mileage.  However, Ms. Yarberry's *testimony* stated that Ms. Beauford did not report the usage a "couple weeks before," i.e., July 13, but, rather, when Ms. Yarberry interviewed her on July 26.  Ms. Beauford's written allegation comports with Ms. Yarberry's testimony, not her summary.  Her written allegation states that Plaintiff was driving a van on Sundays during April, May, and June.  It specifically states the van use stopped before July.  It does not mention use on the weekend of July 13, even though Defendant claims that the written allegation was received after July 13.  Defendant asked Ms. Beauford to write down the allegation after she made it and, Plaintiff avers, it would be irrational to omit an allegation that Plaintiff used the van only a few days before. Plaintiff argues that that irrationality is indicative of discrimination, and that the discrepancy would allow a jury to infer that Defendant did not receive the allegation until July 26, casting doubt on the motivation for the investigation and the accuracy of Ms. Yarberry's summary.  In short, because Ms. Beauford's written allegation and Ms.

Yarberry's testimony contradicts Ms. Yarberry's written summary, Plaintiff believes that a jury may infer that Ms. Beauford never alleged that Plaintiff was driving the van on July 13 or that she only made the allegation after July 20, meaning that the jury could conclude that the investigation was motivated by retaliation.

Fourth, Plaintiff asserts that it would have been irrational for Defendant to hold two meetings about a transfer with Plaintiff *after* it received a report that she used a van without authorization. *Response* [#41] at 31-32.  On July 19, immediately after Defendant claimed it learned of the allegation, Defendant confirmed to Plaintiff that she was being transferred but did not raise any concerns about unauthorized use of a van at that time. Plaintiff states that it does not make sense for Defendant to hold two meetings with Plaintiff about the transfer when it suspected she was guilty of a terminable offense and planned to check the mileage on the van the next day.  Based on this timeline, Plaintiff avers that a jury may infer that Defendant did not receive any allegation that Plaintiff was using a van before July 20 and that Defendant is not providing the real reason why it started its investigation.

Fifth, Plaintiff asserts that she was terminated within days after she engaged in protected activity.  *Response* [#41] at 32 (citing, in part, *Pl.'s Ex. 18, Rule 30(b)(6) Depo. of Def.* [#41-1] at 41:7-9; 51:23-52:2; *Def.'s Ex. A, Allegation of Vehicle Usage for Personal Use* [#38-1] at 43-44).  She was placed on administrative leave within five days of her communications with Defendant regarding her upcoming transfer to Lakewood. The vehicle use allegation and investigation only emerged after she objected that the transfer was discriminatory and asked for the opportunity to consult with her physician. Plaintiff argues that the timeline of the first allegation raises questions about Ms.

Beauford's credibility, especially because Ms. Yarberry did not ask why Ms. Beauford came forward with the allegation only after the van had not been driven in weeks. Plaintiff also points out that Ms. Yarberry raised no concerns about Ms. Beauford's own policy violations for failing to report Plaintiff's unauthorized use as soon as she was aware of it, in contravention of Defendant's corporate compliance policy. The allegation was apparently raised only after Plaintiff requested accommodations and opposed discrimination at the meeting about her transfer, and she was then placed on administrative leave on her first day back to work after the meeting. Based on the timing of the allegation immediately following her protected activity, Plaintiff avers that a jury may infer that her protected activity in the transfer meeting was the basis of the allegation and resulting investigation.

Sixth, Plaintiff asserts that Ms. Yarberry failed to ask important questions of Plaintiff and Ms. Brock, another of Defendant's employees. *Response* [#41] at 33-34 (citing, in part, *Pl.'s Ex. 17, Decl. of Wendy Brock* [#37-17] ¶¶ 4-5; *Pl.'s Ex. 18, Rule 30(b)(6) Depo. of Def.* [#41-1] at 36:16-23, 43:10-19, 49:25-51:3, 56:16-57:5, 58:16-23, 59:5-7, 60:25-62:18, 63:15-17, 69:10-15, 75:20-22; *Pl.'s Ex. 20, Decl. of Pl.* [#41-3] ¶¶ 6, 10, 13, attach. 1; *Pl.'s Ex. 25, 2015 Note by Pl.* [#41-8]; *Def.'s Ex. A, Written Allegation* [#38-1] at 42). For example, a central premise of Ms. Beauford's allegation against Plaintiff is that Plaintiff was using the van for a church group, which Ms. Beauford based on a purported conversation with Ms. Brock. However, Ms. Yarberry did not ask either Plaintiff or Ms. Brock any questions about the theory that Plaintiff was using vans for a church group, and she did not ask Ms. Brock whether the conversation with Ms. Beauford occurred or, if so, what was said.

Seventh, Plaintiff asserts that Defendant's investigation did not focus on obtaining evidence that Plaintiff was actually using a van on the weekends. *Response* [#41] at 34-35 (citing, in part, *Pl.'s Ex. 17, Decl. of Wendy Brock* [#37-17] ¶ 8; *Ex. 18, Rule 30(b)(6) Depo. of Def.* [#41-1] at 41:7-9, 43:10-19, 50:20-22, 51:24-52:2, 58:16-23, 59:5-7, 59:17-60:5, 67:10-68:9, 69:10-15, 75:20-22; *Pl.'s Ex. 19, Depo. of Pl.* [#41-2] at 42:11-43:5; *Pl.'s Ex. 20, Decl. of Pl.* [#41-3] ¶¶ 1, 7-8; *Pl.'s Ex. 23, Reason for Separation* [#41-6]; *Pl.'s Ex. 24, July 22 to Oct. 11, 2019 Email String* [#41-7]; *Pl.'s Ex. 25, 2015 Note by Pl.* [#41-8]; *Def.'s Ex. A, Allegation of Vehicle Usage for Personal Use* [#38-1] at 43-44). Plaintiff states that Ms. Yarberry's investigation was incomplete on a central point: whether Plaintiff drove the van on July 20. No individual interviewed was able to provide any testimony that Plaintiff was driving the van on Saturdays or Sundays. Ms. Beauford was the only individual who ever stated that she saw Plaintiff actively driving a company van on other weekends. No one supported Ms. Beauford's allegation that a van was frequently missing on Sundays. No one else stated that Plaintiff's car was frequently parked at the building on Sundays. Ms. Yarberry did not try to obtain objective evidence that Plaintiff drove the van. For example, Defendant did not produce evidence of the odometer mileage, such as mileage records or written communications regarding the mileage. Based on these and other facts, Plaintiff asserts that a jury could infer that Defendant was not interested in unauthorized use of the van but, rather, was using the investigation as a cover to terminate Plaintiff's employment for retaliatory reasons.

Finally, Plaintiff asserts that Ms. Yarberry's investigation construed all evidence against Plaintiff and focused on peripheral issues rather than whether Plaintiff was driving a van. *Response* [#41] at 36-38 (citing, in part, *Pl.'s Ex. 18, Rule 30(b)(6) Depo. of Def.*

[#41-1] at 36:16-23, 42:11-43-3, 51:24-52:2, 56:16-57:24, 63:15-17, 66:8-13, 67:4-9; *Pl.'s Ex. 20, Decl. of Pl.* [#41-3] ¶¶ 6, 14-15; *Def.'s Ex. A, Allegation of Vehicle Usage for Personal Use* [#38-1] at 43-44.  The fob log shows that Plaintiff was rarely in the building on the weekends, meaning she was not entering the building to retrieve the van keys, and no one ever stated that Plaintiff was taking the keys home with her or that the keys were missing on weekends.  In response to allegations that Plaintiff was in the building without permission, Plaintiff told Ms. Yarberry that she came in on the weekends when necessary, such as when she had a lot of paperwork or to take kids for home passes at Defendant's request.  Plaintiff asserts that a jury may conclude that it is contradictory that Plaintiff would enter the building on July 20, but never entered the building for over three months when she was allegedly using a van.  In short, Plaintiff argues that Ms. Yarberry's sham investigation was not intended to determine whether Plaintiff was driving a van but, rather, was intended to justify Plaintiff's termination, as demonstrated by Ms. Yarberry's inaccurate summary of her interviews, the irrational and contradictory timeline, and the focus on peripheral issues rather than the core allegation that she was using the van.

Individually, the Court notes that these allegations would likely be insufficient for a showing of pretext.  *See, e.g.*, *Rutledge v. Bd. of Cnty. Comm'rs of Johnson Cnty., Kan.*, No. 20-2012-DDC-GEB, 2022 WL 910724, at *16 (D. Kan. Mar. 29, 2022) ("Analyzing the evidence in the light most favorable to plaintiff and drawing all inferences in his favor, the court concludes that his pretext arguments—either individually or taken as a group—fail to create a genuine, triable dispute of material fact about pretext.").  Taken together, though, the Court finds that a reasonable jury could find that Plaintiff has shown enough "weaknesses, implausibilities, inconsistencies, incoherence, or contradictions" in

Defendant's proffered legitimate reason for terminating Plaintiff's employment to rationally find the reason unworthy of credence.  *Litzinger*, 25 F.4th at 1287.  Defendant provides evidence and reasonable argument as to why Plaintiff's evidence of pretext may largely be explained away as innocent actions having nothing to do with retaliation.  *Reply* [#44] at 4-5.  However, given that Defendant moves for entry of summary judgment in its favor on the issue of pretext, the Court must review the evidence in a light most favorable to Plaintiff as the non-movant.  *See Rutledge v. Bd. of Cnty. Comm'rs of Johnson Cnty., Kan.*, 2022 WL 910724, at *16.   In so doing, the Court finds that Plaintiff has shown that there is a genuine issue of material fact regarding pretext, and summary judgment on Plaintiff's Title VII retaliation claim, to the extent that it is based on the July 19, 2019 meeting, is therefore inappropriate.

Accordingly, Defendant's Motion [#38] is **denied** to the extent that Plaintiff's Title VII retaliation claim is based on the July 19, 2019 meeting, and summary judgment is denied on those facts.

**B.    ADA**

"The ADA prohibits employers from discriminating against 'a qualified individual on the basis of disability.'"  *Hermann*, 21 F.4th at 674 (quoting 42 U.S.C. § 12112(a)).

**1.    Retaliation**

"[T]o prosecute an ADA retaliation claim, 'a plaintiff need not show that she suffers from an actual disability.'"  *Foster v. Mountain Coal Company, LLC*, 830 F.3d 1178, 1186 (10th Cir. 2016) (quoting *Selenke v. Med. Imaging of Colo.*, 248 F.3d 1249, 1264 (10th Cir. 2001)).   "Rather, on this point, the plaintiff need only show that [s]he had a reasonable, good-faith belief that [s]he was disabled."  *Foster*, 830 F.3d at 1186.  The

parties do not dispute that Plaintiff was disabled or, at a minimum, had a reasonable, good-faith belief that she was.

At the summary judgment stage, ADA retaliation claims are essentially evaluated in the same way as Title VII retaliation claims. Because Plaintiff does not direct the Court's attention to direct evidence of retaliation, but instead only to circumstantial evidence, the *McDonnell Douglas* analytical framework applies here. *See Herrmann v. Salt Lake City Corp.*, 21 F.4th 666, 679 (10th Cir. 2021).

### a.    Step One: Prima Facie Case

Plaintiff must first present a prima facie case of retaliation by providing evidence sufficient to demonstrate that she "(1) engaged in protected activity; (2) suffered a material adverse action; and (3) a causal connection exists between the protected activity and the adverse action." *Hermann*, 21 F.4th at 679. The first element is sometimes framed as requiring the plaintiff to show that she "engaged in protected opposition to discrimination." *EEOC v. Picture People, Inc.*, 684 F.3d 981, 988 (10th Cir. 2012). The retaliation provision of the ADA protects "any individual" who has opposed any act or practice made unlawful by the ADA. 42 U.S.C. § 12203(a).

Here, Plaintiff asks the Court to hold as a matter of law that she engaged in protected activity and that she suffered a material adverse action. *Motion* [#37] at 14. Defendant seeks entry of summary judgment in its favor on the third element of a prima facie case. *Motion* [#38] at 33-35.

### i.    Element One: Protected Activity

Plaintiff asserts that she engaged in protected activity under the ADA "when she asked for accommodations related to her September 2018 injury: (1) not performing

physical restraints and (2) postponing the effective date of the transfer until she met with her physician the next week." *Motion* [#37] at 15.  Defendant does not address whether the first point is protected activity.  *See Response* [#40] at 29-30.  Regarding the second point, Defendant only states that it "takes issue with Plaintiff's characterization of her dialog [sic] with [Defendant] as requests for accommodation.  Plaintiff engaged in dialog [sic], through both in-person and email communications, with [Defendant] regarding whether her transfer to the Lakewood facility was necessary, evidently because Plaintiff was unconvinced of the potential commute time."  *Id.*  Defendant provides no legal argument or evidentiary citation for this statement.

The Court holds that Plaintiff engaged in activity protected by the ADA.  Regarding "not performing physical restraints," *see Motion* [#37] at 15, "[a]n employee's request that [her] employer provide [her] an accommodation for a disability constitutes a protected activity for purposes of advancing an ADA retaliation claim."  *Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166, 1209 (10th Cir. 2018).

Regarding "postponing the effective date of the transfer until she met with her physician the next week," *see Motion* [#37] at 15, Plaintiff cites *Foster v. Mountain Coal Company, LLC*, 830 F.3d 1189-90, for the proposition that a "request to attend [a] doctor appointment to schedule surgery" is protected activity.  However, *Foster* did not make a blanket statement that requests to attend doctor appointments are always protected activity under the ADA.  There, the Tenth Circuit stated: "We think Foster's request to attend his doctor appointment to schedule surgery (the implication being that the surgery had already been authorized) and the employee's request in [*EEOC v. Product Fabricators, Inc.*, 763 F.3d 963 (8th Cir. 2014),] for time to meet with his doctor to ask

about some type of shoulder surgery (the implication being that any surgery was far from certain) markedly differ." *Foster*, 830 F.3d at 1190. Here, Plaintiff's email stated: "In addition, since it's my medical review with my doctors in a few short weeks, isn't this Friday to have a decision to you a little premature? I am not refusing, but I need a little more clarity from you and from the doctors to make a [sic] educated decision." *Pl.'s Ex. 11, July 18, 2019 E-mail from Pl. to Def.* [#37-11] at 1.

It is unclear what additional information Plaintiff needed from her doctor before she could make a decision on the transfer. It also appears that a "medical review" *may* be closer to the situation of *Product Fabricators* (meeting with a doctor to ask about shoulder surgery) than it is to the situation in *Foster* (meeting with a doctor to schedule an authorized surgery). Nevertheless, given Defendant's lack of legal argument or evidentiary citation in opposition on this point, the Court finds that Defendant has failed to show there is a genuine issue of material fact here. *See Est. of Papadakos v. Norton*, 663 F. App'x 651, 657 n.4 (10th Cir. 2016) (stating that a "single sentence" is insufficient to adequately brief an issue).

Accordingly, Plaintiff's Motion [#37] is **granted** to the extent that the Court holds that Plaintiff engaged in protected activity for purposes of her ADA retaliation claim.

### ii.    Element Two: Material Adverse Action

Plaintiff next asks the Court to hold that she suffered a material adverse action for purposes of her ADA retaliation claim. *Motion* [#37] at 14. However, despite making this request, she provides absolutely no legal argument on this point, instead focusing solely on the issue of protected activity in the section of her Motion [#37] concerning ADA retaliation. *See Motion* [#37] at 14-16. In fact, she concludes this section by merely

asking the Court to grant "partial summary judgment that she engaged in protected activity under the ADA," omitting any mention of the second element.  In light of the utter lack of legal argument or evidentiary citation, the Court finds that this portion of the Motion [#37] must be denied.  *See Elide Fire USA Corp. v. Auto Fire Guard, LLC*, No. 21-cv-00943-WJM-NYW, 2022 WL 1013831, at *6 (D. Colo. Apr. 5, 2022) (stating that "the Local Rules of Practice for this District require that all motions must 'be supported by a recitation of legal authority,' . . . and that undeveloped arguments lacking analysis or citations to legal authority are generally deemed waived" (quoting D.C.COLO.LCivR 7.1(d); citing *LNV Corp. v. Hook*, No. 14-cv-00955-RM-HR, 2018 WL 10245906, at *2 (D. Colo. June 21, 2018)).

Accordingly, Plaintiff's Motion [#37] is **denied** to the extent she asks the Court to hold that she suffered a material adverse action for purposes of her ADA retaliation claim.

### iii.   Element Three: Causal Connection

Defendant seeks entry of summary judgment on Plaintiff's ADA retaliation claim because it argues there is no genuine issue of material fact regarding a causal connection between Plaintiff's protected activity and the termination of her employment.  *Motion* [#38] at 33-35.  Here, for essentially the same reasons discussed in Section III.1.b. above (other than the discussion concerning the E.E.O.C. complaint, which is not at issue with respect to Plaintiff's ADA retaliation claim), the Court finds that the timing of the protected conduct at issue and the termination of Plaintiff's employment is sufficient here to show causation. *See Anderson*, 181 F.3d at 1179.  Defendant is therefore not entitled to summary judgment on this element of Plaintiff's prima facie case.

Accordingly, Defendant's Motion [#38] is **denied** to the extent that Defendant seeks entry of summary judgment in its favor on the causation portion of Plaintiff's ADA retaliation claim.

### b.    Step Two: Legitimate, Non-retaliatory Reason

Defendant provides the same reason for the termination of Plaintiff's employment here as for the Title VII retaliation claim, i.e., violation of the vehicle use policy. *Motion* [#38] at 33-3.  Thus, for the same reasons provided in Section III.A.2. above, there appears to be no genuine issue of material fact on this point, and the Court finds that Defendant has met its burden of pointing to a legitimate, non-retaliatory reason for its termination of Plaintiff's employment.

### c.    Step Three: Pretext

Plaintiff provides the same arguments for pretext here as for the Title VII retaliation claim. *Motion* [#38] at 33-3.  Thus, for the same reasons provided in Section III.A.3. above, the Court finds that there appears to be a genuine issue of material fact on this point, and therefore entry of summary judgment is inappropriate.

Accordingly, Defendant's Motion [#38] is **denied** to the extent Defendant seeks entry of summary judgment in its favor on Plaintiff's ADA retaliation claim.

### 2.    Discrimination

42 U.S.C. § 12112(a) of the ADA provides: "No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." A "qualified individual" is defined as "an individual who, with or without reasonable

accommodation, can perform the essential functions of the employment position that such individual holds or desires."  42 U.S.C. § 12111(8).

To succeed on an ADA discrimination claim, Plaintiff must "present some affirmative evidence that disability was a determining factor" in Defendant's adverse action.  *See Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997).  This means that she "must prove that [Defendant] acted with a discriminatory animus against her because she had a disability."  *Aubrey v. Koppes*, 975 F.3d 995, 1014 (10th Cir. 2020).  Where, as here, a plaintiff does not have direct evidence of discriminatory animus, she may show such animus through circumstantial evidence, which is analyzed under the *McDonnell Douglas* burden-shifting framework.  *Tesone v. Empire Mktg. Strategies*, 942 F.3d 979, 995 (10th Cir. 2019).

### a.      Step One: Prima Facie Case

To survive summary judgment, Plaintiff must raise a genuine dispute of fact on each element of her prima facie case by showing an issue of fact that "(1) [s]he was a disabled person as defined by the [ADA]; (2) [s]he was qualified, with or without reasonable accommodation, to perform the essential functions of h[er] job; and (3) [s]he was fired because of h[er] disability."  *Hermann*, 21 F.4th at 678.  Plaintiff seeks entry of summary judgment in her favor on the first two elements.  *Motion* [#37] at 9.  Defendant seeks entry of summary judgment in its favor on the third element.  *Motion* [#38] at 28-29.

### i.      Element One: Disabled

Plaintiff asks for entry of summary judgment in her favor on the issue of whether Plaintiff was disabled as defined by the ADA.  *Motion* [#37] at 9-10.  Defendant offers no

legal authority, argument, or evidence in opposition to this request.  *See Response* [#40] at 16.  Generally, an individual is protected by the ADA if that individual is "regard[ed] as having a [physical] impairment."  42 U.S.C. § 12102(1)(C).  Here, Plaintiff had a physical impairment at least since her September 2018 work-related injury, and there is no dispute that Defendant was aware of this impairment.  Thus, there appears to be no genuine issue of material fact as to this element.

Accordingly, Plaintiff's Motion [#37] is **granted** to the extent Plaintiff seeks entry of summary judgment in her favor on this element.

### ii.   Element Two: Qualified

Plaintiff asks for entry of summary judgment in her favor on the issue of whether Plaintiff was qualified, with or without reasonable accommodation, to perform the essential functions of her job of transporting residents.  *Motion* [#37] at 9, 11-14.

The Court finds that there is a genuine issue of material fact here.  On the one hand, Plaintiff held her position from 2007 to 2019, without any negative performance reviews.  *See MacDonald v. E. Wyo. Mental Health Ctr.*, 941 F.2d 1115, 1119-20 (10th Cir. 1991) (holding that qualification can be shown by holding a position for a significant period of time).  Further, there were at least three times during her tenure when she was restricted from performing physical restraints due to workplace injuries, the last of which, just before her termination, lasted about ten months.  There is no indication that Plaintiff's job duties were significantly altered during these periods or that she was unable to perform her normal job duties satisfactorily during this period.

On the other hand, Defendant presents evidence that performing physical restraints was an essential responsibility regardless of whether Plaintiff's job title was

"Transporter" or "Milieu Counselor."  *See, e.g.*, *Hennagir v. Utah Dep't of Corrs.*, 587 F.3d 1255, 1262 (10th Cir. 2009) (stating that an employer has the right to establish what is required to perform a job); *see, e.g.*, *Ex. A*, at 20:10-15; *Ex. B*, 15:8-7, 38:5-8.  Defendant also presents evidence that it had to accommodate her inability to perform physical restraints through scheduling and other staffing adjustments, and that having staff able to perform this action (regardless of whether it is deemed a "function" or a "technique," as the parties argue) was essential to Defendant's government funding and the safety of Defendant's staff and the youth for whom Defendant was responsible.  *Ex. A*, 12:12-18, 36:6-12, 92:4-10, 102:10-15.  The Court therefore finds that there is a genuine issue of material fact on this element.

Accordingly, the Court **denies** Plaintiff's Motion [#37] to the extent she seeks entry of summary judgment in her favor on this element of her claim.

### iii.    Element Three: Causation

Defendant asks for entry of summary judgment in its favor because Plaintiff purportedly cannot show a genuine issue of material fact that she was discriminated against because of her disability.  *Def.'s Motion* [#38] at 28-29.

Defendant's sole argument on this point is that "[t]here is not sufficient temporal proximity between Plaintiff's injury and resulting restriction and her termination to support her contention that discriminatory intent was the basis of her termination."  *Id.* at 29. Protected conduct very closely followed by an adverse action may justify an inference of retaliatory motive.  *Marx v. Schnuck Mkts., Inc.*, 76 F.3d 324, 329 (10th Cir. 1996).  The evidence is undisputed that Plaintiff was unable to perform physical restraints at least three times during her twelve years with Defendant, and that, although the initial two time

periods are unclear, the third period lasted approximately ten months from September 2018 until her employment was terminated in July 2019. Defendant provides no legal authority that temporal proximity must be measured from the point at which Plaintiff's activities were restricted due to a disability. Here, Plaintiff worked with her disability until July 2019, but when she offered some resistance to a transfer that was explicitly based, at least in part, on her disability, Defendant soon after terminated her employment, i.e., within a couple of weeks. The Tenth Circuit has held that a six-week period between the adverse action and protected activity is close enough in time to establish causation, but that a three-month period is not. *See Anderson*, 181 F.3d at 1179. In other words, taking the evidence in a light most favorable to Plaintiff as the non-movant on this issue, Defendant sought to transfer Plaintiff based on her disability, and when Plaintiff demurred, her employment was shortly thereafter terminated. The Court therefore finds that Plaintiff has shown a genuine issue of material fact regarding causation, and summary judgment is therefore inappropriate.

Accordingly, Defendant's Motion [#38] is **denied** to the extent Defendant seeks entry of summary judgment in its favor on Plaintiff's ADA discrimination claim with respect to causation.

### b.    Affirmative Defense

Defendant also seeks entry of summary judgment in its favor on Plaintiff's ADA discrimination claim based on an affirmative defense. *Def.'s Motion* [#38] at 30-31. As Defendant points out, the ADA limits its definition of discrimination where a "covered entity can demonstrate that the [reasonable] accommodation would impose an undue hardship on the operation of the business of such covered entity . . . ." 42 U.S.C. § 12112(b)(5)(A);

*see also Exby-Stolley v. Bd. of Cnty. Comm'rs.*, 979 F.3d 784, 821 (10th Cir. 2020) (confirming that "undue hardship" is an affirmative defense under the ADA. An "undue hardship" is an action requiring significant difficulty or expense by the employer. 42 U.S.C. § 12111(10).

Defendant asserts that providing accommodation to Plaintiff would have caused Defendant undue hardship as defined by the ADA. *See generally Def.'s Motion* [#38] at 30-31. Specifically, Defendant states that "an undue burden would weigh upon [Defendant] if Plaintiff continued to work at the Aurora facility without the ability to perform restraints." *Id.* at 30. However, this is a non-sequitur, because this accommodation was not at issue at the time Defendant terminated Plaintiff's employment. In fact, Plaintiff affirmatively states that Defendant did not fail to accommodate her. *Response* [#41] at 18 n.4. The evidence is undisputed that, at Defendant's request, Plaintiff agreed to her transfer to the Lakewood facility at the July 19, 2019 meeting; in other words, she did not resist the transfer and demand as an accommodation that she be permitted to remain at the Aurora facility. The issue of whether there is an "undue hardship" on the employer "come[s] into play only after it's clear the . . . modification is a reasonable accommodation necessary to ensure the employee can perform [her] essential job functions." *Hwang v. Kans. State. Univ.*, 753 F.3d 1159, 1163 (10th Cir. 2014). Here, there was no "modification" of Plaintiff's essential duties, and Plaintiff admits that Defendant did not fail to accommodate her. In addition, there is no evidence that transferring Plaintiff to a new location where she would not have to perform restraints would have caused Defendant significant difficulty or expense, especially when, again, the transfer was made at Defendant's own request and Plaintiff agreed to that transfer. *See* 42 U.S.C. § 12111(10).

According to Defendant's evidence and argument, such difficulty and expense only would have occurred had Plaintiff remained at the Aurora facility.  Although Defendant points to continued work at the Aurora facility as the requested accommodation, the evidence is undisputed that Plaintiff had agreed to the transfer to the new location before her employment was terminated.  Because the undue hardship defense is not applicable unless a reasonable accommodation is requested and refused, it does not apply here.

Accordingly, Defendant's Motion [#38] is **denied** to the extent Defendant seeks entry of summary judgment in its favor on Plaintiff's ADA discrimination claim based on its affirmative defense of undue hardship, and, because this defense fails as a matter of law, it is **stricken**.

## IV. Conclusion

IT IS HEREBY **ORDERED** that Plaintiff's Motion [#37] is **GRANTED in part and DENIED in part**, as further set forth above.

IT IS FURTHER **ORDERED** that Defendant's Motion [#38] is **DENIED**.

IT IS FURTHER **ORDERED** that Plaintiff's Title VII discrimination claim is **DISMISSED with prejudice**, pursuant to Plaintiff's voluntary dismissal of this claim.  *See Response* [#41] at 18 n.4.


Dated:  June 22, 2022                                    BY THE COURT:

Kristen L.  Mix
United States Magistrate Judge